## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Lee Smith, Angela Smith, and L. S., a minor,**
**by Lee Smith and Angela Smith, his Next Friends,**

   **Plaintiffs,**      **Hon. Robert J. Jonker**

**v.**            **Case No. 1:23-cv-00736-RJJ-RSK**

**Kalamazoo Public Schools,**

   **Defendant**

_____

**EDUCATORS LEGAL SERVICES, PLLC**
**By: Robert A. Lusk (P38122)**
**Attorney for Plaintiff**
**9070 Campbell Creek Dr.**
**Commerce Township, Michigan 48390**
**(248) 301-1944**
*rlusk@educatorslegalservices.com*

_____

### FIRST AMENDED COMPLAINT

  Lee Smith, Angela Smith, and L. S., a minor, by Lee Smith and Angela Smith,

his Next Friends, file this First Amended Complaint against Defendant, Kalamazoo

Public Schools (the School District), and state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  L. S. (the Student) is an individual who is a minor.

2.  Lee Smith and Angela Smith (the Parents) are the natural parents of the

Student. The Parents and the Student live in the City of Kalamazoo, Michigan,

which is within the geographic boundaries of the Western District of Michigan, Southern Division.

3.      The Student is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131, *et seq.* (Title II of the ADA).  The Student is a student with a disability within the meaning of Section 504 and a qualified handicapped person within the meaning of Section 504's implementing regulations.

4.      The Student is a child with a disability within the meaning of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*

5.      The Student is a person with a disability within the meaning of Michigan's Persons with Disabilities Civil Rights Act.  M.C.L. §§ 37.1101, *et seq.* (the PWDCRA).

6.      The School District is a general powers school district, within the meaning of Michigan's Revised School Code, M.C.L. §§ 380.1, *et seq.*

7.      The Student and the Parents live within the School District's geographic boundaries.

8.      The School District is located within the geographic boundaries of the Western District of Michigan, Southern Division.

9.     The School District receives federal financial assistance within the meaning of Section 504.

10.     The School District is a public entity within the meaning of Title II of the Americans with Disabilities Act.

11.     The School District is a local educational agency within the meaning of the IDEA.

12.     The School District is an educational institution within the meaning of the PWDCRA.

13.     This Court has original jurisdiction over Plaintiffs' allegations the School District violated Section 504, Title II of the ADA, and 42 U.S.C. § 1983.  28 U.S.C. § 1331.

14.     This Court has supplemental jurisdiction over Plaintiffs' allegations the School District violated the PWDCRA because Plaintiff's PWDCRA claim is so related to claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

15.     Venue is properly laid in this Court.  29 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

16.     The Student is diagnosed with emotional dysregulation, anxiety, major depressive disorder, attention deficit disorder, suicidal ideation, and conversion disorder.

17.     The School District first acknowledged the Student was a qualified individual with a disability in 2018, when it developed a Section 504 Plan for him.

18.     As early as 2018, the School District knew, or should have known the Student was child with a disability within the meaning of the Individuals with Disabilities Education Act (IDEA), 29 U.S.C. §§ 1400, *et seq*.  Notwithstanding this fact, the School District failed to evaluate the Student or develop and implement an Individual Education Program (IEP) for the Student until February 16, 2023.

19.     The School District developed annual Section 504 Plans for the Student in 2019, 2020, and 2021.

20.     The Student contracted COVID-19 in December 2021 and, as a result, was not able to attend school between approximately December 14, 2021 and January 15, 2022.

21.     Due to his COVID-19 related absences, the Student fell behind in his schoolwork and was not able to catch up.

22.     The School District refused the Parents' requests to accommodate the Student's inability to catch up with his schoolwork, resulting in the Student receiving

failing grades in almost all his classes.  Rather than accommodate the Student, his teachers reminded him he was no longer sick and told him to "buck up" because he did not have COVID anymore.

23.    The School District's failure to accommodate the Student's absences caused a downward spiral in his mood and behavior and, as a result, he refused to attend school, among other things.

24.    As the Student was unable to attend school, the Parents requested the School District provide him with homebound services pursuant to Michigan law.

25.    The School District refused to provide the Student with homebound services as required by Michigan law.

26.    As a result of the School District's acts and omissions, the Student's mood deteriorated to the point he was hospitalized for approximately two weeks in April 2022.

27.    After the Student was discharged from the hospital, his father took an unpaid leave, pursuant to the Family Medical Leave Act (FMLA), to supervise the Student and to attempt to engage him in educational activities.

28.    The father's FMLA leave cost the family approximately $20,000.00 in wages that otherwise he would have received.

29.     After the Student was discharged from the hospital, the Parents asked the School District, in writing, to conduct an evaluation to determine whether the Student was IDEA-eligible.  The School District ignored this request.

30.     The Student's mood continued to deteriorate.  So did his behavior.  The Student became angry with his parents and told them he hated them.  The Student said he wanted to kill himself.  As a result, the Parents removed all firearms from their home, locked up all medications, and made sure someone was always at home with him.  The Student began sleeping all day and waking up at night.  When the Parents attempted to interact with him, he refused.

31.     The Parents again attempted to schedule a meeting with School District officials to determine whether the School District would provide the Student with FAPE and/or homebound services.  The meeting was scheduled for July 20, 2022 at 9:30 a.m.  The Parents appeared for the meeting but were stood-up by the School District.

32.     The meeting originally scheduled for July 20, 2022 was rescheduled and held on July 26, 2022.  The School District officials present at the July 26, 2022 meeting were not familiar with the Student, the Student's disability, and the Parents' requests for services and accommodations.  The School District officials present at the meeting assured the Parents they would revise the Student's attendance record but have not done so as of the date of this Complaint.

33.    The Parents, based on professional advice, hospitalized the Student from early August until the end of October 2022.  During the Student's hospitalization, he also received private educational services.

34.    The Student's hospitalization and private educational services cost over $300,000.00.

35.    As the Student neared the end of his hospitalization, the Parents again contacted the School District to initiate an evaluation to determine whether the Student was IDEA-eligible.  However, the School District refused to take any steps to determine whether the Student was IDEA-eligible until he physically re-entered the School District.

36.    After the Student physically re-entered the School District, the School District finally evaluated him to determine whether he was IDEA-eligible.  The School District determined the Student was IDEA-eligible and developed and implemented an IEP for the Student on February 16, 2023.

37.    The School District's acts and omissions, including its failure to meet its statutory obligations to the Student under federal and Michigan law, have deeply and permanently scarred the Student.

## COUNT I
## VIOLATION OF SECTION 504

38.    The Parents and the Student incorporate, by this reference, the allegations in paragraphs 1 through 37 of this First Amended Complaint.

39.     Section 504 and its implementing regulations prohibit a recipient of federal financial assistance from discriminating against a qualified individual with a disability or a student with a disability on the basis of his or her disability.

40.     Section 504's implementing regulations refer to a qualified individual with a disability or a student with a disability as a qualified handicapped person.

41.     Section 504 and its implementing regulations define prohibited discrimination to include:

> A.     Denying a qualified handicapped person the opportunity to participate in or benefit from aids, benefits, or services offered by the recipient of federal financial assistance;
>
> B.     Providing a qualified handicapped person with aids, benefits, or services that are not as effective as those provided to others;
>
> C.     Providing different or separate aids, benefits, or services to qualified handicapped persons or any class of handicapped persons; or,
>
> D.     Utilizing methods of administration that have the effect of subjecting qualified handicapped persons to discrimination on the basis of disability or that have the effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's programs or activities.

42.     Section 504 and its implementing regulations require a recipient of federal financial assistance that operates a public elementary or secondary school to provide a student who is a qualified handicapped person a free appropriate public education (FAPE) regardless of the nature or severity of the eligible student's handicap or disability.

43.     The School District is a recipient of federal financial assistance that operates public elementary or secondary schools.

44.     With respect to FAPE, Section 504 and its implementing regulations define:

> A.     An appropriate education as the provision of regular or special education and related services that are designed to meet the individual educational needs of eligible students as adequately as the needs of nondisabled or nonhandicapped students are met, consistent with procedures that satisfy the requirements of Section 504 and its implementing regulations;
>
> B.     A free education is the provision of educational and related services without cost to disabled or handicapped students and their families; and,
>
> C.     If a public or private residential placement is necessary to provide FAPE to a disabled or handicapped student, the private

placement, including non-medical care and room and board, must be provided at no cost to the person or his or her parents or guardian.

45.    The School District violated Section 504 and its implementing regulations by:

A.    Not creating and implementing Section 504 plans that provided the Student with FAPE;

B.    Not evaluating the Student to determine whether he was IDEA-eligible even after it knew or should have known he was IDEA-eligible;

C.    Not evaluating the Student to determine whether he was IDEA-eligible after receiving written requests to do so from the Parents;

D.    Providing the Student with a Section 504 Plan instead of an IEP from 2018 until February 16, 2023;

E.    Not evaluating the Student to determine whether he was IDEA-eligible and not providing him with an IEP because his disabilities were primarily in the affective rather than the academic domain;

F.      Not accommodating the Student's inability to catch up with his schoolwork after his COVID-19-related absences by, for example, permitting the modification of his assignments;

G.      Not providing the Student with homebound services;

H.      Regardless of the Parents' written requests, not evaluating the Student to determine if he was IDEA-eligible until he physically returned to school after his hospitalization; and,

I.      Regardless of the Parents' written request, not completing an IEP for the Student until February 16, 2023.

46.    The School District did not provide the Student with FAPE, as required by Section 504 and its implementing regulations, by requiring the Parents to secure and pay for social work or psychological services the Student would have received from the School District had the School District either created and implemented Section 504 plans that provided the Student with FAPE or evaluated him to determine whether he was IDEA-eligible and implemented an IEP for the Student between 2018 and 2023.

47.    The School District did not provide the Student with FAPE, as required by Section 504 and its implementing regulations, by requiring his parents to pay for his private placement in a hospital between August and October 2022.

48.     The School District did not provide the Student with FAPE, as required by Section 504 and its implementing regulations, by refusing to evaluate him to determine whether he was IDEA-eligible between the time he returned home from his private placement until he physically returned to school.

49.     The School District did not provide the Student with FAPE, as required by Section 504 and its implementing regulations, by failing to have an IEP in place when he returned to school after his private placement.

50.     The School District was deliberately indifferent to the rights of the Parents and the Student under Section 504 and its implementing regulations.

51.     The School District's violations of Section 504 and its implementing regulations were intentional.

52.     The School District's violations of Section 504 and its implementing regulations were malicious.

53.     The School District's violations of Section 504 and its implementing regulations were in bad faith.

54.     The School District's violations of Section 504 and its implementing regulations caused the Parents and the Student to suffer damages.

55.     The Parents and the Student suffered the following damages: the Parents and the Student experienced mental anguish and emotional distress; the Parents experienced loss of consortium with the Student;  the Student experienced

loss of consortium with the Parents; the Parents were required to pay for psychological and psychiatric services that should have been provided by the School District; the Student's father lost approximately $20,000.00 in wages during his unpaid FMLA leave; and, the Parents were required to pay for a private placement caused by the School District's violations of Section 504 and its implementing regulations.

## COUNT II
## VIOLATION OF TITLE II ADA

56.     The Parents and the Student incorporate, by this reference, the allegations in paragraphs 1 through 55 of this First Amended Complaint.

57.     Title II of the ADA provides, in part:

> …[N]o qualified individual with a disability shall, by reason to such disability be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
>
> 42 U.S.C. § 12132

58.     Title II of the ADA and its implementing regulations provide that Title II of the ADA shall not be construed to apply a lesser standard than the standards applicable under Section 504.

59.     Title II of the ADA and its implementing regulations define prohibited discrimination to include:

A.     Denying a qualified individual with a disability the opportunity to participate in or benefit from the aids, benefits, and services of the public entity;

B.     Affording a qualified individual with a disability an opportunity to participate in or benefit from the aids, benefits, and services the public entity provides others;

C.     Providing a qualified individual with a disability with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as provided others;

D.     Providing different or separate aids, benefits, or services, to individuals with disabilities or to any class of individuals with disabilities than is provided to others;

E.     Limiting a qualified individual with a disability in the enjoyment of rights, privileges, or opportunities enjoyed by others receiving such aids, benefits, or services;

F.     Utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or that have the purpose

or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's programs;

G.    The failure to make reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability; and,

H.    Imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class or individuals with disabilities from fully and equally enjoying any services, programs, or activities.

60.    As Title II of the ADA and its implementing regulations may not be construed to apply a lesser standard than the standards applicable under Section 504, Title II of the ADA also requires the School District to provide FAPE to qualified individuals with a disability who are students, as described in paragraphs 40 – 42 of this Complaint.

61.    The School District violated Title II of the ADA and its implementing regulations by:

A.    Not creating and implementing Section 504 plans that provided the Student with FAPE;

B.   Not evaluating the Student to determine whether he was IDEA-eligible even after it knew or should have known he was IDEA-eligible;

C.   Not evaluating the Student to determine whether he was IDEA-eligible after receiving written requests to do so from the Parents;

D.   Providing the Student with a Section 504 Plan instead of an IEP from 2018 until February 16, 2023;

E.   Not evaluating the Student to determine whether he was IDEA-eligible and not providing him with an IEP because his disabilities were primarily in the affective rather than the academic domain;

F.   Not accommodating the Student's inability to catch up with his schoolwork after his COVID-19-related absences by, for example, permitting the modification of his assignments;

G.   Not providing the Student with homebound services;

H.   Regardless of the Parents' written requests, not evaluating the Student to determine if he was IDEA-eligible until he physically school after his hospitalization; and,

I.   Regardless of the Parents' written requests, not completing an IEP for L. S., the minor, until February 16, 2023.

62.     The School District did not provide the Student with FAPE, as required by Title II of the ADA and its implementing regulations, by requiring the Parents to pay for social work and psychological services he would have received from the School District had the School District either created and implemented Section 504 plans that provided the Student with FAPE or evaluated him to determine whether he was IDEA-eligible and implemented an IEP for him between 2018 and 2023.

63.     The School District did not provide the Student with FAPE, as required by Title II and its implementing regulations, by requiring the Parents to pay for his private placement in a hospital between August and October 2022.

64.     The School District did not provide the Student with FAPE, as required by Title II of the ADA and its implementing regulations, by refusing to evaluate him to determine whether he was IDEA-eligible between the time he returned home from his private placement until physically returned to school.

65.     The School District did not provide the Student with FAPE, as required by Title II of the ADA and its implementing regulations, by failing to have an IEP in place when he returned to school after his private placement.

66.     The School District was deliberately indifferent to the rights of the Parents and the Student under Title II of the ADA and its implementing regulations.

67.     The School District's violations of Title II of the ADA and its implementing regulations were intentional.

68.     The School District violations of Title II of the ADA and its implementing regulations were malicious.

69.     The School District's violations of Title II of the ADA and its implementing regulations were in bad faith.

70.     The School District's violations of Title II of the ADA and its implementing regulations caused the Parents and the Student to suffer damages.

71.     The Parents and the Student suffered the following damages: the Parents and the Student experienced mental anguish and emotional distress; the Parents experienced loss of consortium with the Student;  the Student experienced loss of consortium the Parents; the Parents were required to pay for psychological and psychiatric services that should have been provided by the School District; the Student's father lost approximately $20,000.00 in wages during his unpaid FMLA leave; and, the Parents, were required to pay for a private placement caused by the School District's violations of Title II of the ADA and its implementing regulations.

## COUNT III
## VIOLATION OF SECTION 1983

72.     The Parents and the Student incorporate, by this reference, the allegations in paragraphs 1 through 71 of this First Amended Complaint.

73.     Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person

> within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

42 U.S.C. § 1983

74. The School District is a person within the meaning of Section 1983.

75. The Parents and the Student are citizens of the United States.

76. The IDEA is a law of the United States.

77. The School District, by custom and usage, deprived the Parents and the Student of their rights, privileges, and immunities secured by the IDEA.

78. The IDEA and its implementing regulations require the School District to provide all IDEA-eligible students with FAPE according to its procedural requirements.

79. The School District violated IDEA's procedural requirements by, among other things:

    A. Failing to meet IDEA's child-find requirements;

    B. Failing to timely develop or implement IEPs for the Student; and,

    C. Failing to provide the Parents with special education procedural safeguards.

80. The School District violated IDEA by not providing the Student with FAPE as required by the IDEA.

81.   The School District violated the IDEA by not paying for the hospitalizations of the Student caused by the School District's failure to provide him with FAPE.

82.   Additionally, the School District violated the IDEA and its implementing regulations by, among other things:

A.   Not evaluating the Student to determine whether he was IDEA-eligible even after it knew or should have known he was IDEA-eligible;

B.   Not evaluating the Student to determine whether he was IDEA-eligible after receiving written requests to do so from the Parents;

C.   Providing the Student with a Section 504 Plan instead of an IEP from 2018 until February 16, 2023;

D.   Not evaluating the Student to determine whether he was IDEA-eligible and not providing him with an IEP because his disabilities were primarily in the affective rather than the academic domain;

E.   Not accommodating the Student's inability to catch up with his schoolwork after his COVID-19-related absences by, for example, permitting the modification of his assignments;

F.   Not providing the Student with homebound services;

G.    Regardless of the Parents' written requests, not evaluating the Student to determine if he was IDEA-eligible until he physically returned to school after his hospitalization; and,

H.    Regardless of the Parents' written request, not completing an IEP for the Student until February 16, 2023.

83.    The School District's violation of the IDEA and its implementing regulations caused the Parents and the Student to suffer the following damages: the Parents and the Student experienced mental anguish and emotional distress; the Parents experienced loss of consortium with the Student;  the Student experienced loss of consortium with the Parents; the Parents were required to pay for psychological and psychiatric services that should have been provided by the School District; the Student's father lost approximately $20,000.00 in wages during his unpaid FMLA leave; and, the Parents were required to pay for a private placement caused by the School District's violations of the IDEA and its implementing regulations.

## COUNT IV
## VIOLATION OF THE PWDCRA

84.    The Parents and the Student incorporate, by this reference, the allegations in paragraphs 1 through 83 of this First Amended Complaint.

85.    Michigan's PWDCRA prohibits educational institutions from discriminating on the basis of disability.

86.     Michigan's PWDCRA defines illegal discrimination on the basis of disability to include: excluding, limiting, or otherwise discriminating against a student in the terms, conditions, or privileges of the institution because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution.

87.     The School District violated Michigan's PWDCRA by, among other things:

    A.    Not providing the Student with Section 504 plans that provided him with FAPE;

    B.    Not evaluating the Student to determine whether he was IDEA-eligible even after it knew or should have known he was IDEA-eligible;

    C.    Not evaluating the Student to determine whether he was IDEA-eligible after receiving written requests to do so from the Parents;

    D.    Providing the Student with a Section 504 Plan instead of an IEP from 2018 until February 16, 2023;

    E.    Not evaluating the Student to determine whether he was IDEA-eligible and not providing him with an IEP because his disabilities were primarily in the affective rather than the academic domain;

F.   Not accommodating the Student's inability to catch up with his schoolwork after his COVID-19-related absences by, for example, permitting the modification of his assignments;

G.   Not providing the Student with homebound services;

H.   Regardless of the Parents' written request, not evaluating the Student to determine if he was IDEA-eligible until he physically returned to school after his hospitalization; and,

I.   Regardless of the Parents' written requests, not completing an IEP for the Student until February 16, 2023.

88.   The School District's violation of Michigan's PWDCRA caused the Parents and the Student to suffer the following damages: the Parents and the Student experienced mental anguish and emotional distress; the Parents experienced loss of consortium with the Student;  the Student experienced loss of consortium with the Parents; the Parents were required to pay for psychological and psychiatric services that should have been provided by the School District; the Student's father lost approximately $20,000.00 in wages during his unpaid FMLA leave; and, the Parents were required to pay for a private placement caused by the School District's violations of the IDEA and its implementing regulations.

## RELIEF REQUESTED

89.     the Parents and the Student incorporate, by this reference, the allegations in paragraphs 1 through 88 of this First Amended Complaint.

90.     The Parents and the Student are seeking relief that is unavailable under the IDEA and, therefore, are not required to exhaust administrative remedies as a pre-condition to filing this Complaint.

91.     The Parents and the Student are seeking compensatory, consequential, punitive, and exemplary damages.

92.     The Parents and the Student are seeking reasonable actual attorneys' fees and costs.

WHEREFORE, the Parents and the Student respectfully ask this Honorable Court to enter judgment in their favor against the School District in the full amount of the compensatory, consequential, punitive, and exemplary damages determined by the Court and, in addition, pre- and post-judgment interest and actual and reasonable attorneys' fees and costs.

**EDUCATORS LEGAL SERVICES, PLLC**

**By:** */s/ Robert A. Lusk* **(P38122)**
**Attorney for Plaintiff**
**9070 Campbell Creek Drive**
**Commerce Township, Michigan 48390**
**(248) 301-1944**
*rlusk@educatorslegalservices.com*

## **JURY DEMAND**

Plaintiffs demand a jury trial on all claims so triable.

**EDUCATORS LEGAL SERVICES, PLLC**

**By: */s/ Robert A. Lusk* (P38122)**
**Attorney for Plaintiff**
**9070 Campbell Creek Drive**
**Commerce Township, Michigan 48390**
**(248) 301-1944**
*rlusk@educatorslegalservices.com*